Karen LINDELL; Wayne Hilk;
and Carver Entertainment,
Inc., Plaintiffs,

v.

CITY OF WACONIA; Waconia City Council; Randy Schultz; Mike Knodt; Wendy Kuntz; Dan Steinhagen; Paul Johnson; Keith Sjodin; and Bruce Eisenhauser, Defendants.

No. CIV.98–1814(JRT/FLN).

United States District Court,
D. Minnesota.

Oct. 13, 1999.

Jeffery M. Baill, Steven Theesfeld, Yost & Baill, Minneapolis, MN, for plaintiffs.

George C. Hoff, Paula Ann Callies, Hoff Barry & Kuderer, Eden Prairie, MN for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

Plaintiffs Karen Lindell, Wayne Hilk, and Carver Entertainment, Inc., bring this action against defendants City of Waconia, the Waconia City Council, Randy Schultz, Mike Knodt, Wendy Kuntz, Dan Steinhagen, and Paul Johnson in their individual capacities.[1] Plaintiffs raise a battery of federal and state constitutional claims asserting that Waconia City Ordinance § 581.05, which regulates charitable gambling in Waconia, is invalid. This matter is before the Court on defendants' motion for summary judgment. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

In March 1996, plaintiffs Lindell and Hilk, the owners of plaintiff Carver Entertainment, Inc., purchased Sud's Bar in Waconia, MN. Plaintiffs successfully obtained a transfer of the liquor license from the former owner, but were unable to find a qualifying Waconia charity willing to sponsor pull-tab gambling at Sud's. To sponsor gambling in Waconia, a charity must qualify under the provisions of Waconia City Ordinance § 581.05, which states:

> Approval of applications for lawful gambling licenses pursuant to Minnesota Statutes Sections 349.11—349.222 shall be granted by the City of Waconia only as to an organization qualified under Minnesota Statutes and in which either 50% or more of the active members of such organization reside within the City of Waconia or in which such organization meets regularly at least once per month and at least 90% of such regularly scheduled meetings are conducted within the City of Waconia.

Although there are other organizations that could qualify under § 581.05 to sponsor pull-tabs in Waconia, the Waconia Fire Department is the only qualifying organization that chooses to sponsor pull-tabs in Waconia bars.

In April, 1996, Sud's Bar manager Michael Lindell appeared before the Waconia City Council to request a variance or amendment of § 581.05 to permit the Minnesota Waterfowl Association, a nonqualifying charity, to sponsor pull-tabs at Sud's. The City Council denied the request. Plaintiffs claim that in 1989–90, the previous owners of Sud's were permitted to have the Waterfowl Association sponsor pull-tabs in the bar and that the Council waived the requirements of § 581.05 for this purpose. Defendants deny that the Waterfowl Association was ever given a waiver from § 581.05.

---

1. The above-named defendants are all members of the Waconia City Council. The plaintiffs have voluntarily dismissed their claims against Keith Sjodin, the City Attorney, and Bruce Eisenhauer, the City Administrator.

In June 1996, plaintiffs reached an agreement with the Waconia Fire Department to have the Department sponsor pull-tabs at Sud's, but after a dispute over when rent was to be paid, the Department refused. Plaintiffs then attempted to persuade other potentially qualifying charities to sponsor pull-tabs at Sud's, but they all refused, citing their reluctance to involve themselves in gambling. Plaintiffs next located non-Waconia charities willing to sponsor pull-tabs in their bar and willing to spend all gambling profits in Waconia. In September 1997, Michael Lindell again asked the City Council to either amend § 581.05 or grant a variance that would permit these charities to sponsor pull-tabs. The City Council denied this request. Plaintiffs sold the bar at a loss in December 1997 to two individuals, one of whom is a Waconia resident. In February 1998, the City Council approved the Waconia Fire Department's application to sponsor pull-tabs at the bar, now called Hopper's.

In July 1998, plaintiffs filed this Complaint in Minnesota state court, challenging the validity of § 581.05 on the following grounds: that it is preempted by Minnesota law; that it discriminates against interstate commerce in violation of the Commerce Clause; that it violates the Privileges and Immunities Clause; that it deprives them of various liberty and property interests without due process; that it effects a taking without just compensation in violation of the Fifth Amendment; that it violates substantive due process; and that it deprives them of the equal protection of the law by burdening their fundamental right to earn a living.[2] Defendants removed the case to this Court, and now seek summary judgment on all of plaintiffs' remaining claims.

## ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of mate-rial fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, a court is required to view the facts in a light most favorable to the nonmoving party, and the movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *See Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983).

### B. Standing

█ Defendants first argue that plaintiffs lack standing to challenge Waconia City Ordinance § 581.05, because plaintiffs are not a nonprofit organization and thus are not eligible to obtain a gambling license under Minnesota law. *See* Minn. Stat. § 349.16, subd. 2.

█ The requirement of standing is an essential part of the case-or-controversy mandate of Article III. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County,* 115 F.3d 1372, 1378 (8th Cir.1997). Plaintiffs must meet three minimal constitutional requirements in order to establish standing: (1) an "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that the injury is "fairly traceable" to the challenged action and not the result of the independent action of some third party not before the court; and (3) that it is likely that a favorable decision will redress

---

**2.** The plaintiffs have voluntarily dismissed with prejudice Counts 10–17 of their Complaint, which were state tort claims. Both parties agree that there is no significant dif-ference in the claimed rights granted under the federal and state constitutions, and so both focus only on the federal constitutional claims.

the injury. *See Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130.

Plaintiffs have alleged that they lost substantial revenue and ultimately had to sell their business at a loss as a result of their inability to offer pull-tabs in their bar. Because plaintiffs located a charity willing to sponsor pull-tabs in their bar, but the charity did not qualify to sponsor gambling in Waconia under § 581.05, plaintiffs point to § 581.05 as the source of their injury. The undisputed facts reveal, however, that a qualifying Waconia charity, the Waconia Fire Department, was initially willing to sponsor pull-tabs in plaintiffs' bar, but the agreement broke down over a dispute unrelated to § 581.05. The other potentially qualifying Waconia charities thereafter refused plaintiffs' invitation to sponsor gambling at the bar. It thus appears to the Court that plaintiffs' injury is not the fault of § 581.05, but is the result of the independent action of third parties not before the Court. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

Even assuming that plaintiffs can meet the minimum constitutional requirements for standing, however, they must overcome the prudential limitations on a court's exercise of jurisdiction. Among them is the requirement that plaintiffs generally must assert their own legal rights and interests, not the rights of third parties. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Plaintiffs first claim that they are asserting their own right of access to gambling sponsors and the rents, customers, and profits such sponsors generate. This argument is misplaced. While a nonprofit organization may have a property right in an unexpired gambling license, *see Greater Duluth COACT v. City of Duluth,* 701 F.Supp. 1452, 1456 (D.Minn.1988), plaintiffs cite no law, and the Court has found none, in which a bar's desire to have a charitable organization sponsor gambling on the bar's premises was raised to the level of a legally protected right. Even if plaintiffs had such a right, § 581.05 does not purport to regulate plaintiffs' access to sponsors; indeed, plaintiffs had access to at least one such sponsor. Essentially, plaintiffs are claiming a right to have a non-qualifying charity sponsor gambling in their bar, notwithstanding the existence of qualifying charities. Such a claim has no merit. Though, as plaintiffs allege, they may have suffered injury personal to themselves, this is not sufficient to give them standing. *See U.S. Dep't of Labor v. Triplett,* 494 U.S. 715, 720, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990) (stating that plaintiffs have no standing to assert third-party rights merely because the same allegedly illegal act affects both the plaintiff and the third party). Instead, plaintiffs' claims are properly understood as an assertion of the illegal nature of § 581.05 as it applies to non-qualifying charities. Whatever the merits of this claim, it belongs to the charities and not to plaintiffs. Accordingly, plaintiffs have no standing to challenge § 581.05.

■ Plaintiffs next argue that this is the rare case when the prudential limitation on the assertion of third-party rights should be relaxed because there is a special relationship between bars and charities. *See Warth,* 422 U.S. at 510, 95 S.Ct. 2197. Specifically, plaintiffs argue that charities in Waconia are permitted to conduct gambling only on their own premises or to lease space from a bar for this purpose. *See* Waconia City Ordinance § 581.04. Because § 581.05 "adversely affect[s] a relationship existing between them and the persons whose rights assertedly are violated," therefore, plaintiffs assert that they have standing to raise the charities' claims. *See id.*

The Court is not persuaded that § 581.04 creates a "special relationship" between bars and nonprofit organizations akin to the relationships found in cases where courts have permitted third-party standing. *See Triplett,* 494 U.S. at 720, 110 S.Ct. 1428 (permitting lawyers to raise claims on behalf of potential clients be-

cause clients have a due process right to obtain legal representation); *Secretary of State of Md. v. Joseph H. Munson Co.,* 467 U.S. 947, 956, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (permitting professional fundraiser to raise claims on behalf of charity because of special First Amendment context); *Singleton v. Wulff,* 428 U.S. 106, 113–18, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (plurality opinion) (permitting doctors to raise constitutional right to abortion on behalf of patients); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (permitting organization to raise freedom of association claims on behalf of its members because to require the members to raise it themselves would effectively destroy the right).

The right that plaintiffs claim on behalf of charities is the right to conduct gambling in Waconia. Were such charities to succeed in this hypothetical claim, they would be able to offer gambling on any premises they owned. *See* Waconia City Ordinance § 581.04. Thus, bars are not a necessary part of the charities' ability to exercise the right that plaintiffs claim on their behalf, as was the case in *Triplett* and *Singleton.* Nor are there any First Amendment concerns in this case that would warrant a relaxation of the third-party standing limitation, as in *Munson.* Finally, there is no suggestion that non-qualifying charities are unable to raise such claims on their own behalf, as in *Singleton* or *NAACP.* This last defect is sufficient, by itself, to defeat plaintiffs' assertion of third-party standing. *See Johnson v. Missouri,* 142 F.3d 1087, 1090–91 (8th Cir.1998) ("Before a litigant will be allowed to assert a claim on behalf of a third party, the litigant must show ... that the third party is unable to protect its own interests") (quoting *Iowa Utilities Bd. v. FCC,* 120 F.3d 753, 817 (8th Cir.1997), *aff'd in part, rev'd in part on other grounds sub nom. AT & T Corp. v. Iowa Utilities Bd.,* 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999)). Accordingly, because plaintiffs have no standing to challenge Waconia City Ordinance § 581.05,

defendants' summary judgment motion is granted. Because the Court grants summary judgment on the issue of standing, it need not reach the remainder of defendants' arguments in support of their motion.

### ORDER

Based on the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Docket No. 16] is **GRANTED,** and plaintiffs' complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**